**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| MADISON STREET PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>THE MARCUS CORPORATION,<br><br>    Defendant. | Case No. 3:20-cv-50471 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Background | 1 |
| III. | Legal Standard | 4 |
| | A. Prevailing Party Status | 4 |
| | B. Eligibility for Awards of Costs and Attorneys' Fees | 4 |
| IV. | Marcus is Entitled to Attorneys' Fees and Costs | 5 |
| | A. Marcus Is the Prevailing Party | 6 |
| | B. This Case Is Exceptional | 6 |
| V. | Conclusion | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*,
   939 F.3d 905 (7th Cir. 2019) ...................................................................................5, 6

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*,
   532 U.S. 598 (2001) .........................................................................................................4

*Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*,
   16 CV 3676, 2020 WL 4723980 (N.D. Ill. July 13, 2020) ................................5, 6, 9

*LHO Chicago River, L.L.C. v. Perillo*,
   942 F.3d 384 (7th Cir. 2019) ......................................................................................4, 5

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ....................................................................................................4, 5

*Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*,
   No. 03 C 6070, 2004 WL 2474317 (N.D. Ill. Sept. 30, 2004) ......................................2

*Riviera Distribs., Inc. v. Jones*,
   517 F.3d 926 (7th Cir. 2008) ......................................................................................4, 6

*Ty, Inc. v. Jones Grp. Inc.*,
   237 F.3d 891 (7th Cir. 2001) ...........................................................................................8

*Zila Swab Techs., Inc. v. Van Dyke*,
   No. 01 C 8729, 2003 WL 1745901 (N.D. Ill. Apr. 1, 2003) .......................................4, 6

**Statutes**

15 U.S.C. § 1117(a) .......................................................................................................1, 4, 5, 9

**Other Authorities**

Fed. R. Civ. P. 54(d) ..........................................................................................................1, 4, 9

## I. INTRODUCTION

Over two years ago, Defendant and Counterclaim Plaintiff The Marcus Corporation ("Marcus") requested that Plaintiff and Counterclaim Defendant Madison Street Properties, LLC ("Madison") change the name of its not-yet-established hotel in Rockford, Illinois, (the "Rockford Hotel") to avoid infringing on Marcus's trademark. Despite having made no real investment in the name "Hotel Kate," Madison ignored Marcus's request and filed this suit. Now, after eighteen months of expensive litigation, Madison has capitulated and decided to change the name of its Rockford Hotel. Madison could have done this two years ago or at any point before forcing Marcus to incur significant expenses. Upon the determination that Marcus is the prevailing party and because, Madison's litigation tactics make this an exceptional case, Marcus respectfully requests that the Court award Marcus attorneys' fees and costs under 15 U.S. Code § 1117(a) and Federal Rule of Civil Procedure 54(d). Upon this Court's determination of Marcus's entitlement to attorneys' fees and costs, Marcus requests time to file a fee petition with supporting documentation for the value of the services and expenses, as allowed under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 54(d)(2)(C).

## II. BACKGROUND

In 2019, Marcus—the owner of 17 hotels and resorts across the country—opened the Saint Kate – The Arts Hotel (the "SAINT KATE Hotel"), a boutique hotel in Milwaukee, Wisconsin. Marcus filed a federal trademark application for the SAINT KATE Mark on July 5, 2018, and began promoting the hotel in November 2018. Since then, the SAINT KATE Hotel has become

well-known and critically acclaimed,[1] with target and actual customers found throughout the Midwest, including northern Illinois.

Around the same time Marcus began developing the SAINT KATE Hotel in Milwaukee, Madison began plans for a hotel in Rockford, just 90 miles away. Initially, Madison chose the name "Spafford House." (*See* Ex. A at MSP009648, MSP009652-53.) Yet, without explanation, Madison eventually abandoned that name and instead decided to name the Rockford Hotel, "Hotel Kate." *Id.* Madison further opted to keep pursuing that name after it learned of the Saint Kate Hotel – despite the fact that many of its own employees and contractors noticed and commented on the obvious similarities between the two hotel names and the fact that Marcus was clearly the senior user of the mark. (*See, e.g.,* Exs. B-D.) Indeed, it was not until April 2019 that Madison sought trademark protection for "Hotel Kate," well after Marcus filed its trademark registration and began promoting the SAINT KATE Hotel. (Dkt. 1 at ¶ 11.) And although Madison's static hotelkate.com website went live in December 2019,[2] to date, Madison's hotel is not yet open to the public, has not begun accepting guest reservations, and has not engaged in any advertising or promotional campaigns.

---

[1] *#6 Top Hotel in the Midwest*, Condé Nast Traveler's 2020 Readers' Choice Awards https://www.cntraveler.com/readers-choice-awards/united-states/midwest-top-hotels; *Best New Hotel*, USA Today's 2019 10 Best Readers' Choice Awards, https://www.businesswire.com/news/home/20200113005781/en/.

[2] Madison registered the hotelkate.com domain name in April 2018. (Dkt. 1 at ¶ 10.) Although Madison has previously attempted to argue that its domain registration gives it superior rights to Marcus with respect to the relevant marks, "[t]he law is clear that the mere registration of a domain name does not constitute the use of the domain name as a trademark." *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2474317, at *3 (N.D. Ill. Sept. 30, 2004). This argument is yet another example of the meritless positions Madison has taken throughout this case.

Despite affirmative knowledge of confusion in the market (and potential infringement of Marcus's SAINT KATE Hotel Mark) and affirmatively tracking any and all of its mentions in the media, Madison decided not to change the name. (*See* Exs. B-D.) In December 2019, Marcus immediately put Madison on notice of its infringement. After receiving this notice, Madison did nothing to cease or mitigate its infringement. Instead, in December 2020, after months of silence from Madison and nearly a year after Marcus's initial letter, Madison suddenly filed a Complaint for Declaratory Judgment against Marcus asking the court to declare that the pending "Hotel Kate" Mark did not infringe Marcus's SAINT KATE Mark. (Dkt. 1.)

In the over eighteen months since Madison brought this suit, the parties have completed extensive fact discovery, including exchanging documents, written discovery requests, subpoenaing multiple third party witnesses for documents and testimony, and taking nine depositions, retained experts and exchanged expert reports, and have nearly completed all necessary pre-trial tasks. Marcus has incurred significant legal fees and expenses as a result of defending this action.

On June 14, 2022, Madison moved to voluntarily dismiss the Complaint for Declaratory Judgment due to "changed circumstances" and abandoned its pending trademark application for the Hotel Kate Mark.[3] (Dkt. 46.)

---

[3] Despite Madison's representations during the June 28, 2022 telephonic conference that it would promptly cease its use of the Hotel Kate name, the hotelkate.com website and Hotel Kate social media pages were still publicly accessible until at least July 14, 2022 – a full month after Madison filed its motion to dismiss its complaint referring to "changed circumstances." Although it appears that Madison has finally taken down these online materials, it is worth noting that this occurred only after Marcus's counsel wrote to counsel for Madison and prompted it to do so. (Ex. E.)

## III. LEGAL STANDARD

### A. Prevailing Party Status

For the purposes of fee-shifting statutes, a litigant is considered the prevailing party where it obtains a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001). Additionally, the Seventh Circuit considers a defendant the prevailing party when the plaintiff files a motion for voluntary dismissal and its claims are dismissed with prejudice. *Riviera Distribs., Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (finding defendant the prevailing party where case was dismissed with prejudice upon plaintiff's motion for voluntary dismissal); *Zila Swab Techs., Inc. v. Van Dyke*, No. 01 C 8729, 2003 WL 1745901, at *2 (N.D. Ill. Apr. 1, 2003) ("[Plaintiff's] dismissal of its Lanham Act claim *with prejudice* clearly makes [defendant] the 'prevailing party' for purposes of considering such an award [of attorneys' fees]."). Such an outcome constitutes a favorable judgment for the defendant. "That this came about when [the plaintiff] threw in the towel does not make [the defendant] less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor. [The plaintiff] sued; [the defendant] won; no more is required." *Riviera*, 517 F.3d at 928.

### B. Eligibility for Awards of Costs and Attorneys' Fees

Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party should be awarded its costs unless a statute provides otherwise. Fed. R. Civ. P. 54(d)(1). Additionally, in trademark disputes, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

Under current trademark law, courts have rejected a rigid standard for assessing exceptionality and instead look to the "totality of the circumstances." *LHO Chicago River, L.L.C. v. Perillo*, 942 F.3d 384, 388-89 (7th Cir. 2019); *Octane Fitness, LLC v. ICON Health & Fitness,*

*Inc.*, 572 U.S. 545, 554 (2014). That is, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Determining whether a case is "exceptional" is determined on a case-by-case basis. *Id.*

In assessing exceptionality, courts particularly consider the following factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *LHO Chicago River*, 942 F.3d at 386. Further, willful infringement is a significant factor when finding a case exceptional. Indeed, "[w]illfulness alone can justify an exceptional-case finding." *Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, 16 CV 3676, 2020 WL 4723980, at *7 (N.D. Ill. July 13, 2020); *see also 4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 913-14 (7th Cir. 2019) (reversing denial of attorneys' fees in trademark case where infringers "acted in bad faith, intentionally, willfully[,] and maliciously[;] [and] have refused to cease the infringing activity"). Overall, this framework gives courts "equitable discretion" in light of these factors to grant attorneys' fees. *LHO Chicago River,* 942 F.3d at 388.

## IV.   MARCUS IS ENTITLED TO ATTORNEYS' FEES AND COSTS

Under the Lanham Act, a prevailing party may in "exceptional cases" recover its "reasonable attorney fees." 15 U.S.C. § 1117(a). Marcus is the prevailing party for purposes of both costs and fees for at least the reasons set forth below. Further, this is an exceptional case because it stands out from others with respect to the weaknesses of Madison's claims and with respect to the manner in which Madison litigated this case. Marcus therefore requests an award of reasonable attorneys' fees under 15 U.S.C. § 1117(a).

### A. Marcus Is the Prevailing Party

Should the Court dismiss Madison's Complaint with prejudice, as it should for the reasons set forth in Marcus's parallel opposition to Madison's Motion to Dismiss, Marcus is necessarily the prevailing party in this litigation. As noted above, courts in the Seventh Circuit consider a defendant to be the prevailing party when the plaintiff's claims are voluntarily dismissed with prejudice. *Riviera*, 517 F.3d at 928; *Zila*, 2003 WL 1745901, at *2. Such an outcome constitutes a favorable judgment for the defendant, and the fact "[t]hat this came about when [the plaintiff] threw in the towel does not make [the defendant] less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor. [The plaintiff] sued; [the defendant] won; no more is required." *Riviera*, 517 F.3d at 928.

Furthermore, dismissal of this case with prejudice would result in a material alteration of the parties' legal relationship. Marcus now has what it wanted from the very beginning – for Madison to cease use of the "Hotel Kate" name and to abandon its improper trademark application directed to the same. This alone entitles Marcus to costs and, taken with the exceptionality of the case, makes Marcus eligible for attorneys' fees.

Accordingly, the Court should find that Marcus is the prevailing party.

### B. This Case Is Exceptional

Marcus is entitled to attorneys' fees under the Lanham Act because this litigation qualifies as an "exceptional case." As noted above, "[w]illfulness alone can justify an exceptional-case finding." *Deckers Outdoor*, 2020 WL 4723980, at *7; *see also 4SEMO.com*, 939 F.3d at 913-14.

Throughout the course of this litigation, Madison has acted willfully and in bad faith. Madison prosecuted its meritless claims for over eighteen months, imposing significant expenses on Marcus, only to drop the case and agree to take the actions proposed by Marcus over two years ago shortly after being served with expert reports demonstrating what Marcus has been telling it

6

all along – that Madison's conduct created real consumer confusion. Changing the name of the Rockford Hotel two years ago would have resulted in minimal expense for the parties—Madison had not made any meaningful investment in the "Hotel Kate" name and already had a list of dozens of alternative names to choose from. (*See* Ex. A at MSP009652-54.) Further, Madison had no demonstrated attachment to the name, let alone one that would justify eighteen months of litigation. Madison's hotel was not and still is not built out, is not open to the public, has not begun accepting guest reservations, and has not engaged in any advertising or promotional campaigns. Instead of seeking a business resolution to this dispute or simply reverting to the previously selected name – the Spafford House – Madison's response to Marcus's notice of infringement was months of silence followed by the sudden filing a lawsuit. This is not rational or good faith conduct.

Additionally, it cannot be ignored that Madison also engaged in misconduct before the United States Patent and Trademark Office ("PTO") in an apparent attempt to gain leverage over Marcus in this litigation. As detailed in Marcus's First Amended Counterclaims, (Dkt. 40), Madison committed fraud on the PTO, falsely representing that it would be pursuing foreign trademark protection that required it to secure a U.S. registrations in an (ultimately successful) attempt to accelerate examination of its trademark application and gain some kind of perceived advantage in its ongoing dispute with Marcus. (*See id.* at ¶¶ 20-31.) In reality, as Madison's sole principal, Peter Provenzano, admitted during his deposition, Madison never had any intention of seeking foreign trademark protection for the "Hotel Kate" name at all, let alone protection in a country whose trademark regime would first require a U.S. registration. (*Id.*) As such, Madison's conduct before the PTO represents yet another attempt by Madison to gain benefits to which it had no rights, illustrating a remarkable sense of irrational self-importance that has pervaded this dispute from the outset.

Collectively, these actions support a finding that Madison used litigation tactics to impose unnecessarily greater costs on Marcus in hopes of Marcus conceding to Madison's infringement. All of Madison's actions throughout this litigation constitute bad faith and were objectively unreasonable such that this case is exceptional.

The objective unreasonableness of Madison's actions is underscored by the relative weakness of Madison's claims and its willful infringement of Marcus's SAINT KATE Mark. Marcus was the first to file its registration application, the first to use its mark in commerce, and the first to successfully register its mark. Accordingly, Marcus has senior rights in its mark and a nationwide priority as a result of its senior federal registration. Moreover, there is a significant likelihood of confusion resulting from Madison's use of "Hotel Kate," particularly in view of the similarity of the marks, the geographic overlap, and the identical nature of the parties' goods and services. *See Ty, Inc. v. Jones Grp. Inc.,* 237 F.3d 891, 898 (7th Cir. 2001) (finding similarity in marks and similarity in goods or services offered under the marks significant factors in determining trademark infringement). Indeed, during expert discovery, Marcus's two experts confirmed the necessary confusion between the parties' overlapping marks. (Ex. F at ¶ 77; Ex. G at ¶¶ 11, 33.) This highlights the objective unreasonableness of Madison's pursuit of this case, as well as its imposition of significant expenses upon Marcus.

Well before filing its trademark application, Madison was aware of Marcus's SAINT KATE Mark and the SAINT KATE Hotel. In fact, Madison "start[ed] following" any and all mentions of the SAINT KATE Hotel in the media shortly after learning it opened. (*See* Ex. D.) Madison's own documents and deposition testimony further indicate it was aware of potential trademark issues. (*See, e.g.,* Ex. C.) Yet, when Marcus put Madison on notice of its infringement, Madison did nothing to cease or mitigate the effects of its infringing behavior. It did not adopt a

different name (despite having its own list of countless other options (*see* Ex. A at MSP009652-54)), or even attempt to reach a business resolution to this dispute. Rather, Madison sought a declaratory judgment that it did not infringe, (Dkt. 1), a choice that is particularly troubling and questionable given both the clear merits of Marcus's trademark claims and Madison's relative lack of investment – financial or otherwise – in the "Hotel Kate" name. Against this backdrop, Madison's knowledge of and disregard for Marcus's trademark rights strongly supports a finding of willfulness which alone would support finding this case "exceptional." *Deckers Outdoor*, 2020 WL 4723980, at *7.

Finally, by filing this suit in response to Marcus's notice of infringement, Madison flipped the typical trademark infringement enforcement scheme on its head. Where Marcus could typically decide for itself what attorneys' fees and costs it might be willing to incur to protect its trademark, here, the infringer (Madison) sued the trademark holder (Marcus). Having realized the error of its ways and seeing the writing on the wall, Madison is now giving up its infringing name, but not before imposing significant expenses on Marcus and wasting significant resources of this Court. When taken together, the totality of the circumstances stands out from other cases and justifies deeming this case exceptional such that Marcus should be awarded attorneys' fees.

## V.    CONCLUSION

For the foregoing reasons, Marcus is the prevailing party in this case, and this case is exceptional. Accordingly, Marcus respectfully requests that this Court award Marcus its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure 54(d). Upon this Court's award of attorneys' fees and costs to Marcus, Marcus further respectfully requests time to file a fee petition with supporting documentation for the value of the services and expenses, as allowed under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 54(d)(2)(C).

9

Dated: August 5, 2022                    Respectfully submitted,

*/s/Kadie M. Jelenchick*
Kadie M. Jelenchick
Sarah E. Rieger
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.271.2400
414.297.4900
kjelenchick@foley.com
srieger@foley.com


***Attorneys for Defendant and Counterclaim Plaintiff The Marcus Corporation***

4873-9961-3991